**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT TACOMA**

| | |
|---|---|
| MIGUEL ANTONATOS,<br><br>Plaintiff,<br><br>vs.<br><br>KYLE S. KARINEN, in his official capacity as executive director of the Washington Medical Commission;<br><br>TERRY MURPHY, M.D., in his official capacity as chair of the Washington Medical Commission;<br><br>ED LOPEZ, PA-C, in his official capacity as vice chair of the Washington Medical Commission;<br><br>ELISHA MVUNDURA, M.D., in his official capacity as officer-at-large of the Washington Medical Commission;<br><br>APRIL JAEGER, M.D., in her official capacity as commissioner of the Washington Medical Commission,<br><br>Defendants | Case No.: 3:26-cv-5122-TMC<br><br>**SUPPLEMENTAL DECLARATION OF MIGUEL ANTONATOS, M.D. IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION** |

I, Miguel Antonatos, M.D., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**1.** I am the Plaintiff in this action. I am a board-certified internal medicine physician licensed in thirty-three states and have practiced medicine for over fourteen years. I submit this Supplemental Declaration in support of my Renewed Motion for Preliminary Injunction based upon my personal knowledge and review of documents. I could competently testify to all matters stated herein if called as a witness.

**2.** This declaration supplements my prior declaration filed in this action and is submitted to address specifically the timeline and circumstances under which I discovered the structural conflicts and undisclosed dual roles of former Washington Medical Commission Executive Director Melanie De León, and to explain why that information was not reasonably discoverable to me during the administrative disciplinary proceedings that resulted in the Agreed Order dated August 24, 2023.

**I. LACK OF KNOWLEDGE AT THE TIME OF THE AGREED ORDER**

**3.** During the disciplinary proceedings before the Washington Medical Commission that resulted in the Agreed Order dated August 24, 2023, I had no knowledge that Executive Director Melanie De León simultaneously held leadership roles within the Federation of State Medical Boards ("FSMB"), a private national organization involved in developing and disseminating disciplinary frameworks and enforcement guidance for use by state medical boards.

**4.** Specifically, I was unaware at the time I entered the Agreed Order that Ms. De León served as a member of the FSMB Board of Directors and chaired the FSMB Board Action and Content Evaluation ("BACE") Workgroup — a committee responsible for developing

standardized disciplinary categories, evaluative labels, and sanctioning frameworks intended for adoption and use by state medical boards nationwide. These roles overlapped directly with the period during which my disciplinary matter was investigated, charged, and resolved by the Washington Medical Commission.

**5.** Neither I nor my counsel received any disclosure during the administrative proceedings indicating that the Executive Director held these external leadership roles within FSMB or that FSMB's disciplinary frameworks and COVID-19 enforcement guidance had informed the Commission's investigative focus, enforcement orientation, or charging framing in my case.

**6.** The administrative proceedings before the Washington Medical Commission did not involve any disclosure, notice, or suggestion that the Executive Director held external policy roles relevant to the disciplinary framework being applied to my conduct. Absent any such notice, neither I nor my counsel had any basis to independently investigate the national organizational affiliations of Commission staff. No aspect of the charging documents, settlement negotiations, or communications from the Commission identified FSMB guidance as an operative enforcement standard or indicated that Commission leadership held simultaneous roles within the organization that produced that guidance.

**7.** A waiver of rights requires knowledge of what is being waived. Because the existence and significance of Ms. De León's FSMB roles were not disclosed and were not apparent from any document or communication provided to me during the proceedings, I had no meaningful opportunity to evaluate whether the disciplinary process was structured in a

constitutionally neutral manner, to seek recusal or disqualification of officials whose external roles created potential conflicts, to challenge whether enforcement framing derived from FSMB policy guidance constituted an unadopted regulatory standard applied without fair notice, or to make a fully informed decision whether to contest the charges at an adjudicative hearing rather than resolve the matter through the Agreed Order. The absence of disclosure deprived me of any realistic ability to exercise these rights before the Agreed Order was entered.

## II. HOW AND WHEN I DISCOVERED THE FSMB CONFLICTS

**8.** My awareness of the structural conflicts described in this action arose only after I encountered publicly available materials relating to a federal civil rights action filed on October 29, 2025, in the United States District Court for the Northern District of Texas, captioned *Sutton et al. v. Federation of State Medical Boards et al.*, No. 4:25-cv-00999 (N.D. Tex.). In that action, multiple physicians alleged that FSMB coordinated a nationwide enforcement framework targeting physician conduct, clinical judgment, and professional speech during the COVID-19 pandemic through its relationships with state medical boards. Reviewing the allegations and materials associated with that litigation prompted me to investigate whether the same FSMB enforcement network had operated in connection with my own disciplinary proceeding.

**9.** Prior to encountering the *Sutton* litigation materials in late 2025, I had no reason to suspect that officials directly involved in my disciplinary case held simultaneous leadership roles within FSMB or that FSMB's policy outputs had influenced the investigation and charging decisions in my case. The *Sutton* litigation was the first context in which I encountered a detailed description of FSMB's operational relationships with state medical boards

in the COVID-19 enforcement context. Until that time, I had no specific basis to connect my disciplinary proceeding to FSMB's national policy activities.

**10.** Following my review of the *Sutton* materials, I began systematically researching the roles and affiliations of officials whose names appeared on documents issued in connection with my disciplinary case. I specifically reviewed the Statement of Charges issued on February 6, 2023, and identified the signature of Executive Director Melanie De León as the official who authorized and executed the charging instrument against me. I then conducted targeted research into her professional roles and affiliations outside the Washington Medical Commission.

**11.** That research required reviewing a substantial volume of FSMB governance materials, publications, conference records, board rosters, workgroup reports, and related organizational documents. The volume and specificity of materials reviewed was not consistent with ordinary pre-settlement due diligence and would not reasonably have been undertaken absent a specific reason to investigate the national affiliations of a state medical board's administrative staff.

**12.** Through that review, I discovered that Ms. De León served on the FSMB Board of Directors and chaired the FSMB Board Action and Content Evaluation (“BACE”) Workgroup during the same period my disciplinary matter was under investigation and proceeding toward formal charges. During my review of FSMB materials, including the FSMB COVID-19 misinformation policy statement issued on July 29, 2021, I observed terminology and

disciplinary framing related to physician conduct during the COVID-19 pandemic that appeared similar to the framing used in the Statement of Charges issued against me.

**III. THE WAYBACK MACHINE AND REMOVED FSMB MATERIALS**

**13.** A significant portion of the relevant FSMB materials, including FSMB's publicly posted COVID-19 misinformation policy statement issued on July 29, 2021, and materials related to the BACE Workgroup's disciplinary framework initiatives, were no longer available through ordinary web searches or accessible on FSMB's current public website at the time I conducted my research.

**14.** Those materials were located only through historical internet archives, specifically the Wayback Machine operated by the Internet Archive, which preserves prior versions of organizational webpages and documents that have since been modified, removed, or made inaccessible through current web searches.

**15.** Some of these materials were only accessible through archived internet records rather than through the FSMB's current public website. A party conducting ordinary due diligence during or before the August 2023 administrative proceedings would not have located these materials through standard research methods, and the removal or modification of these materials from FSMB's live website further supports that they were not reasonably discoverable through ordinary diligence at the time I entered the Agreed Order.

**IV. WHY THIS INFORMATION WAS NOT DISCOVERABLE BEFORE AUGUST 2023**

**16.** The AAG has argued in prior proceedings that the information regarding Ms. De León's FSMB roles was publicly available and could have been discovered through reasonable diligence before I signed the Agreed Order. That argument fails for several independent reasons.

**17.** First, I had no specific reason during the administrative proceedings to investigate the national organizational affiliations of Commission staff. The Commission's charging documents, correspondence, and settlement communications contained no reference to FSMB, FSMB guidance, or any external policy framework. During the administrative proceedings I had no reason to investigate the external organizational affiliations of Commission staff.

**18.** Second, the significance of Ms. De León's FSMB roles only became apparent after the *Sutton* litigation in October 2025 revealed the broader operational framework connecting FSMB's policy outputs to state medical board enforcement activities. Before that litigation surfaced, the connection between FSMB's BACE Workgroup outputs and the specific framing of individual state board charges was not publicly documented in a manner that would have prompted or directed my investigation.

**19.** Third, the materials most directly relevant to my claims — including FSMB's COVID-19 misinformation policy statement and BACE Workgroup materials — were no longer available through ordinary web searches and required archived internet records to locate. Their absence from FSMB's current public website means they were not accessible through the kind of

research that a party or attorney would ordinarily conduct in connection with a medical board administrative proceeding.

**20.** Fourth, I did conduct discovery during the administrative proceedings through cooperation with the Commission's information requests and production of records. No formal discovery into Commission officials' external affiliations was conducted because no fact or circumstance known to me at that time suggested such investigation was warranted. The constitutional significance of Ms. De León's dual roles was not apparent from the face of the charging documents, the Commission's communications, or any other material available to me during the proceedings.

**21.** My investigation into these issues began in late 2025 following my review of the *Sutton* litigation materials and continued into early 2026. The structural conflict information that forms the basis of the constitutional claims in this action was entirely unknown to me prior to that investigation and was not reasonably discoverable through ordinary diligence during the Washington Medical Commission proceedings or in the period immediately following entry of the Agreed Order.

**22.** As reflected in the National Practitioner Data Bank records submitted as Exhibit G, the Washington Medical Commission order has resulted in multiple additional disciplinary actions by other states. Because these actions rely upon the existence of the Washington order, the professional consequences of that order continue to expand while this litigation is pending.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,

Dated this 11th Day of March 2026.

/s/ Miguel Antonatos
Miguel Antonatos
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I certify that on March 11th, 2026, I caused a true and correct copy of the foregoing **SUPPLEMENTAL DECLARATION OF MIGUEL ANTONATOS, M.D. IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION** to be served upon the following counsel of record via CM/ECF / Email:

**CHRISTINA L. PFLUGER, WSBA 44231**
**PATRICK MYERS, WSBA 55619**
Assistant Attorneys General Office of the Attorney General
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
christina.pfluger@atg.wa.gov
patrick.myers@atg.wa.gov
Attorneys for Defendants
Washington Attorney General's Office

**I served these documents via:**
[x] **The Court's CM/ECF System**
[x] **Email:** Per the contact information provided in the Defendants' Notice of Appearance.

Dated this 11th day of March 2026.

/s/ Miguel Antonatos
Pro Se